**FORD MOTOR CREDIT COMPANY,**
**Appellant,**

v.

**S. E. BARNHART & SONS, INC. and**
**Merle Harr and Betty Harr,**
**Appellees.**

**No. 81–1523.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 15, 1981.

Decided Nov. 16, 1981.

Thomas E. Reilly, Davis & Mazzotta, P. C., Pittsburgh, Pa., for appellant.

David J. Humphreys, P. A., David J. Humphreys, Pittsburgh, Pa., for appellee.

James D. Morris, Commonwealth of Pennsylvania Dept. of Environmental Resources, Philadelphia, Pa., for Commonwealth of Pennsylvania, amicus curiae.

Before HUNTER, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Devastation of the Pennsylvania landscape caused by irresponsible strip mining prompted the legislature to enact a comprehensive statute governing the conduct of mine operators and providing for administrative enforcement. In response to a legislative delegation of authority, the state Department of Environmental Resources adopted a regulation prohibiting removal of backfilling equipment from a mining site until reclamation is completed. The district court held that the regulation barred plaintiff finance company from repossessing a loading machine from a stripping site. Because we conclude that the regulation was not intended to apply to financing agencies and that, if otherwise interpreted, it would exceed the agency's authority, we vacate and remand.

Plaintiff Ford Motor Credit Company brought suit against the defendants Harrs to replevy a wheel loader that had been used in stripping coal from their farm. Plaintiff later amended its complaint to include a claim against defendant S. E. Barnhart & Sons, Inc., the owner of the loader. The district court initially allowed plaintiff to take possession of the equipment but later reversed its order, directed plaintiff to return the loader to the farm, and dismissed the action against the Harrs. Finding that Ford's only remaining claim was for money damages against Barnhart, the district court certified the case under 28 U.S.C.

§ 1292(b) (1976). A panel of this court allowed the appeal.

Barnhart had purchased the wheel loader from Highway Equipment Company on an installment sale contract in April 1978. The agreement was assigned to the Ford Motor Credit Company in November 1978, and a notation to that effect was entered in the filing offices where financing statements had previously been lodged by Highway Equipment Company.[1]

Barnhart ultimately leased the loader to Summit Fuel Company, who used it to strip coal from the Harr farm pursuant to a written agreement. In return, Summit was to pay the Harrs a stipulated royalty, to abide by state and federal regulations on backfilling, and, in addition, to have "at least one piece of mining equipment performing backfilling operations simultaneously with any mining and stripping operations . . . ."

After failing to pay royalties or backfill as agreed, Summit vacated the premises, leaving the loader behind. In the meantime, Barnhart defaulted on its payments to Ford Motor Credit Company. When Ford sought to repossess the loader, the Harrs refused permission and this replevin action followed.

In their answer to Ford's complaint, the Harrs asserted a possessory lien on the equipment. The district court rejected that contention in an order dated October 30, 1980, but scheduled a hearing on the applicability of regulations issued by the Pennsylvania Department of Environmental Resources, particularly the one providing that backfilling equipment must remain on site until restoration is completed.

After the hearing, the court found that the required reclamation had not been accomplished and that the loader was a piece of backfilling equipment within the mean-ing of the regulation. It then concluded that Ford must return the loader to the farm, where it was to remain until the backfilling was completed. The Harrs, however, were not permitted to operate or sell the equipment. After argument, the court denied plaintiff's motion for reconsideration.

On appeal, plaintiff contends primarily that the regulation is applicable only to mining operators, not finance companies. The Harrs assert that they have a possessory lien on the loader by virtue of both the regulation and their status as landlords.

I.

We first discuss the question of jurisdiction. When the district court directed plaintiff to return the loader to the farm, the order recited that the "only outstanding litigation remaining in the case is the claim of the plaintiff against Barnhart for money damages . . . ." This put the case clearly within the ambit of Fed.R.Civ.P. 54(b):

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

Here, the district court did make a final disposition as to one of the multiple parties as well as to one of the multiple claims. Nevertheless, the order directing plaintiff to return the loader to the Harrs' property stated that there was a controlling question of law warranting an immediate appeal. This order was issued pursuant to 28 U.S.C. § 1292(b).

---

1. Attached to the complaint were copies of the installment sale contract between Highway Equipment and Barnhart, the financing statements filed by Highway Equipment, the assignment from Highway Equipment to Ford, and the notices of assignment filed by Ford. The Harrs contend that the notices of assignment filed by Ford are ineffective because they are unsigned. Because of its disposition of the case, the district court did not rule on the Harrs contentions. We do not discuss the issue here, and leave it for further development in the district court.

■ Rule 54(b) and 28 U.S.C. § 1292(b) should be carefully distinguished in application because they serve different interests. Section 1292(b) permits appeals of interlocutory orders upon certification by the district judge and permission by the court of appeals. It is designed to allow for early appeal of a legal ruling when resolution of the issue may provide more efficient disposition of the litigation. The order need not be a final one nor need it decide all of the issues with respect to one party or one or more claims.

■ By contrast, Rule 54(b) requires that the order be final in the sense that it disposes of one or more but fewer than all claims against a party or, in a multiple party situation, a claim against one or more but fewer than all parties. 9 Moore's Federal Practice § 110.09 (2d ed. 1980). The rule permits the district judge to direct entry of judgment if there is no just reason for delay, thus making the decision appealable. No controlling legal principle need be at issue nor need the court of appeals grant permission.[2] The order, however, must be a final one insofar as it decides a specific claim.

At times, the policies behind Rule 54(b) and § 1292(b) may overlap when, as here, a final decision as to one party also involves a controlling principle of law for the litigation. *See Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 n.2, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). The 1961 Note of the Advisory Committee on the Civil Procedural Rules recognized that § 1292(b) might be available in such multi-party situations, but said, "The Rule 54(b) procedure seems preferable for those cases, and § 1292(b) should be held inapplicable to them . . . ." 9 Moore's Federal Practice § 110.22[5] follows

this approach, and states, "If an order can be made appealable by a Rule 54(b) certificate, it, and not a § 1292(b) certificate, should be sought."

■ In the case at hand, the controlling question of law is the interpretation of the Pennsylvania Code. That issue is not relevant to the still pending contractual claim by Ford against Barnhart. Since nothing further remained to be considered on the Ford-Harr claim, it would have been preferable for the district court to have utilized Rule 54(b). However, since the court did not enter judgment on that claim, it is not final at this point and not presently appealable. It cannot be said, therefore, that § 1292(b) is inapplicable. As 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3929 (1977) puts it: "Since the Rule itself [54(b)] provides that absent such entry of judgment, any order disposing of less than all the claims or parties is not final, §. 1292(b) should be available to permit certification and appeal."

Because we are presented with an issue of law that was certified properly under § 1292(b), we will not dismiss the appeal, even though we believe that Rule 54(b) should have been utilized. Dismissal at this stage would result in a remand to the district court so that it could enter an appropriate judgment. We think that the delay and expense generated by that procedural detour is not required here.

We conclude that we have jurisdiction to consider the merits and proceed to that task.[3]

## II.

Pennsylvania has enacted a comprehensive statute, the Surface Mining Conserva-

---

2. If the district court abuses its discretion in granting a Rule 54(b) certification, the order may be reversed on appeal. *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir. 1975); *see also, Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).

3. We also call to the attention of counsel and the district courts the provision of Rule 23 of this court:

". . . The controlling question of law presented for review shall be concisely stated in one sentence, if possible, expressed in the terms and circumstances of the case but without unnecessary detail. The expression will be deemed to include every subsidiary question fairly comprised therein."
Rules of the U. S. Court of Appeals for the Third Circuit (1978).

tion and Reclamation Act, governing strip mining in the state. Pa.Stat.Ann. tit. 52, §§ 1396.1–1396.25 (Purdon Supp.1981). This legislation requires strip mine operators to secure a permit and directs that they post a bond as security for proper backfilling and restoration after the work is completed. *Id.* at § 1396.4. Funds received from forfeiture of the bond may be expended by the Secretary of the Department of Environmental Resources for reclaiming and planting the land affected by the operation, if the Secretary determines the expenditures to be reasonable, necessary and physically possible. *Id.* at § 1396.18(b). The statute also authorizes the Department to promulgate appropriate regulations for the conduct of surface mining operations coming within the provisions of the Act. *Id.* at § 1396.4b(a).

Among the regulations of the Department of Environmental Resources in effect at the time this controversy arose are those published at 25 Pa.Code, Chapter 77, Subchapter D, captioned "Requirements Accompanying Permits Authorizing the Operation of Surface Coal Mines." Section 77.92 is entitled "Requirements" and subsection (a) is labeled "General restrictions." That subsection requires a permittee to limit his operation to designated areas, secure necessary federal permission if navigable waters will be affected, and submit monthly reports of treatment facilities.

Subsection (f), "Mining Procedures," is the regulation at issue. In pertinent part it reads as follows: "The following mining procedures shall apply: . . . (2) Backfilling equipment needed to complete the restoration shall not be removed from the operation until all backfilling and leveling has been completed and released by the Department. Backfilling equipment shall be operable, in use, and capbale [sic] of meeting the requirements of the reclamation plan throughout the life of the mining operation."

The district judge interpreted § 77.92(f)(2) as an absolute prohibition against removal of backfilling equipment until reclamation is completed. He construed the regulation as a broad, coercive measure designed to accomplish the legislative aim of protecting the land from the ravages of strip mining. As such, the regulation would even bind plaintiff finance company. The court concluded that the equipment must remain at the site until someone, possibly Ford itself, completes the backfilling.

Although the Pennsylvania state courts have not addressed the issue, the Pennsylvania Department of Environmental Resources had earlier adopted the same approach as did the district court here. In a similar factual situation, the Department prohibited a finance company from repossessing backfilling equipment from a mining site. The Environmental Hearing Board, an adjudicatory body within the Department, however, held that § 77.92(f)(2) was directed at operators and not finance companies, since they have no part in creating the condition for which DER would hold them liable. *Associates Commercial Corp. v. Pennsylvania Department of Environmental Resources*, Docket No. 78–140–B (July 2, 1979).

Likewise, in several bankruptcy proceedings, DER contended that a trustee in bankruptcy could not remove backfilling equipment where the debtor had not completed reclamation. District and bankruptcy courts rejected this contention, and pointed out that the bond posted by the debtor as a prerequisite to beginning its mining operations was available to meet the backfilling requirements. *Zacherl Coal Co. v. Smith*, 9 B.R. 952 (Bkrtcy.W.D.Pa.1981); *Reddale Coal Co. v. Department of Environmental Resources*, No. 79–330 (Bankruptcy Court W.D.Pa. March 31, 1980).

As an administrative agency, the Department of Environmental Resources has only such authority as the legislature grants it. *Hi-Craft Clothing Co. v. NLRB*, 660 F.2d 910 (3d Cir. 1981). Nothing in the Surface Mining Conservation and Reclamation Act itself refers to financing institutions as such, nor does the authority it gives DER to promulgate regulations extend the Department's reach to finance companies. Moreover, our review of the statute leads us

to doubt that the General Assembly ever intended the Department to issue regulations impairing the security interest of creditors created by the legislature in the Uniform Commercial Code. 13 Pa.Cons. Stat.Ann. §§ 1101–9507 (Purdon Supp. 1980).[4] In sum, we are convinced, as was the agency's own adjudicatory arm, the Environmental Hearing Board, that § 77.-92(f)(2) does not apply to persons in the position of the plaintiff here.

Other considerations also support our conclusion. Under the Pennsylvania Statutory Construction Act, the titles of sections of a statute may be used as an aid in construction. 1 Pa.Cons.Stat.Ann. § 1924 (Purdon Supp.1980). As noted above, the caption of the subchapter containing the regulation at issue is "Requirements Accompanying Permits Authorizing the Operation of Surface Coal Mines." It is thus apparent that the rule is directed to the operator, the only person required to secure a permit—not to a financing agency.

Moreover, if the creditor is not allowed to repossess the equipment until reclamation is completed, the equipment would be left in the hands of a landowner who is under no duty to maintain or protect it. In that circumstance, no public interest is served by the inevitable deterioration of the equipment and impairment of the security. If the regulation's purpose is to force the finance company to arrange for reclamation as a type of ransom for the equipment, the scope of the rule is clearly beyond the intent of the legislature and the authority delegated to the agency.

We are not unmindful of the ravages of strip mining, the lack of environmental concern and financial responsibility evidenced by some strip mine operators, or the need, often, for drastic measures to combat these problems. All of these concerns were ably articulated by the district court in its bench opinion and by the appellees and amicus curiae in their briefs and arguments here. We point out, as did the state Environmental Hearing Board in *Associates Commercial Corp., supra,* that we decide only the issue before us—the applicability of § 77.-92(f)(2) to a party whose only contact with the strip mine operator and the mining operation is its security interest in a piece of mining equipment. We express no opinion on whether the same result would obtain in a case where the operator attempted to sell the equipment while it was on the mine site or where the creditor and operator "staged" the default and foreclosure in order to circumvent the regulation.

We conclude that the district court erred in holding that the regulation applies to plaintiff. Ford's right as a secured creditor to repossess the loader, therefore, is not affected by the regulation.

### III.

Defendants assert that they have a right to a possessory lien on the loader. They claim the lien exists not only by virtue of § 77.92(f)(2) itself, but also because of their status as landlords to whom rent in the form of royalties is owing. The district court, however, ruled without explanation that there was no lien, and the later orders do not address the question.

As we noted earlier, the scope of review on a § 1292(b) appeal is limited. Since no final judgment was entered, we are doubtful that the possessory lien asserted by defendant is before us, other than through the regulation which we hold is not effective here. In these circumstances, we believe it advisable to remand to the district court for findings on the issue and a ruling consistent with them. We do note in passing that defendant's reliance upon a landlord's lien seems misplaced in view of the Pennsylvania law treating an agreement for the right to mine coal to exhaustion as a sale, not a lease. *See Hummel v. McFadden,* 395 Pa. 543, 150 A.2d 856 (1959).

Accordingly, the case is remanded to the district court for further proceedings consistent with this opinion.

---

4. It is also true, of course, that administrative regulations must give way in case of conflict with duly enacted statutory provisions.