**LIBERTY MUTUAL INSURANCE CO.; Liberty Mutual Fire Insurance Co.; and Liberty Insurance Co.**

v.

**PAPER MANUFACTURING CO.**

Civ. A. No. 90–3787.

United States District Court, E.D. Pennsylvania.

Nov. 19, 1990.

Edward A. Greenberg, Sandra Drimak, Philadelphia, Pa., for plaintiffs.

Richard L. Strouse, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me is plaintiffs' motion to dismiss count 5 of defendant's counterclaim pursuant to Fed.R.Civ.P. 12(b)(6). In count 5, Paper Manufacturing Co. asserts that Liberty Mutual Insurance Co., Liberty Mutual Fire Insurance Co., and Liberty Insurance Co., (collectively "Liberty"), engaged in bad faith conduct towards it. Paper contends that as a result it is entitled to punitive damages, costs, and attorney's fees under 42 Pa.C.S.A. § 8371 (Purdon Supp.1990), a recently enacted statute which became effective July 1, 1990. Liberty argues that section 8371 does not afford Paper the relief it seeks because it cannot be applied retroactively to create civil liability where no liability existed before the effective date of the statute. Because I agree with Liberty that count 5 does not state a claim for relief for the redress of allegedly bad faith conduct prior to July 1, 1990, I will grant in part the motion to dismiss. However, as far as Liberty's allegedly bad faith conduct after the effective date of section 8371, Liberty apparently concedes that count 5 states a claim for relief, so I will deny the motion to dismiss count 5 as its refers to post-July 1, 1990, activities.

Between December 31, 1980, and December 31, 1987, the parties entered into a number of insurance contracts whereby Liberty provided liability and worker's compensation coverage for Paper. In its complaint, Liberty asserts that Paper failed to pay $500,000 in premiums and therefore breached the insurance contracts. On July 27, 1990, Paper filed a five-count counterclaim, pleading breach of contract, misrepresentation, conversion, intentional interference with contractual relations, and bad faith conduct (count 5). In count 5 of the counterclaim, Paper maintains that Liberty was "obligated to act reasonably, in good faith and with due care in managing, processing, handling and resolving all claims against" it, counterclaim at ¶ 8, and that Liberty's "wanton, persistent and systematic actions and failures to act amount to bad faith conduct," *id.* at ¶ 37. Paper contends that as a result of this "bad faith conduct" Liberty is liable for punitive damages pursuant to 42 Pa.C.S.A. § 8371.

Section 8371 provides:

Actions on insurance policies.

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess costs and attorney fees against the insurer.

Prior to July 1, 1990, the date section 8371 became effective, there was no insurer bad faith conduct tort in Pennsylvania. In *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), and in *Smith v. Harleysville Insurance Co.*, 494 Pa. 515, 431 A.2d 974 (1981), the Pennsylvania Supreme Court refused to create a cause of action for bad faith conduct. The insureds in both cases sought punitive damages for alleged "bad faith" conduct by the insurers, as does Paper here. In *D'Ambrosio*, the court recognized the "seriousness of 'bad faith' conduct by insurance carriers," but held that the Pennsylvania's Unfair Insurance Practices Act ("UPIA") was the sole means of redress. *D'Ambrosio*, 431 A.2d at 969.[1] As a later court stated:

> [i]t is clear, however, that the *D'Ambrosio* court thoroughly examined and considered the ... [UPIA] ... and finally concluded that ... it ... and its administrative remedies were exclusive unless and until the legislature provided otherwise.

*Rodgers v. Nationwide Mutual Ins. Co.*, 344 Pa.Super. 311, 496 A.2d 811, 814 (1985).

With section 8371, the Pennsylvania legislature has provided otherwise. The relevant question here is whether or not Paper can take advantage of the new statute in

its count 5 of the counterclaim. Liberty contends that section 8371 cannot be applied retroactively to afford Paper relief from allegedly bad faith conduct which occurred before the effective date of the statute. It is the general rule that "no statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926. There is no such manifest intention in section 8371.

 Were section 8371 to apply in this instance it would surely be a retroactive law. A retroactive law has been defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. *R & P Services, Inc. v. Comm., Department of Revenue*, 116 Pa.Cmwlth. 230, 541 A.2d 432, 434 (1988). In other words, if a law creates legal liability for damages which did not exist at the time of the transaction, the law is retroactive. *Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313, 1314 (1976). Prior to the enactment of section 8371, under *D'Ambrosio* and its progeny an insured was precluded from suing its insurer for breach of the duty to act in good faith and was precluded from seeking from the insurer punitive damages, consequential damages, and emotional damages. *See, supra*, at 158, n. 1. Section 8371 creates new liability for the very same activities that prior to July 1, 1990, could not have been the basis for civil liability. In a nutshell, section 8371 creates a new cause of action for bad faith conduct. It, therefore, cannot be applied retroactively.

---

1. *D'Ambrosio* and *Smith* have been applied consistently to reject "bad faith" claims against insurers by insureds. *See, e.g., Giovannitti v. Nationwide Ins. Co.*, 690 F.Supp. 1439 (W.D.Pa. 1988) (no tort cause of action for bad faith conduct and no award of consequential damages from insurer's bad faith denial of claim); *Keene Corp. v. Insurance Co. of North America*, 597 F.Supp. 934 (D.C.D.C.1984) (no punitive damages); *Harrison v. Nationwide Mutual Fire Ins. Co.*, 580 F.Supp. 133 (E.D.Pa.1983); *Layton v. Liberty Mutual Fire Ins. Co.*, 577 F.Supp. 1 (E.D.Pa.1983) (UPIA is sole remedy for alleged bad faith conduct); *D.W. Realty, Inc. v. Hartford Mutual Ins. Co.*, 575 F.Supp. 654 (E.D.Pa.1983)

(UPIA does not give rise to cause of action in tort for breach of implied duty of good faith and fair dealing and no punitive damages); *Commercial Union Assurance Co. v. Pucci*, 523 F.Supp. 1310 (W.D.Pa.1981); *Rodgers v. Nationwide Mutual Ins. Co.*, 344 Pa.Super. 311, 496 A.2d 811 (1985) (UPIA is exclusive remedy and no cause of action for bad faith conduct); *Myers v. USAA Casualty Ins. Co.*, 298 Pa.Super. 366, 444 A.2d 1217 (1982); *Nazer v. Safeguard Mutual Assurance Co.*, 293 Pa.Super. 385, 439 A.2d 165 (1981); *Evans v. Government Employees Insurance Co.*, 291 Pa.Super. 342, 435 A.2d 1258 (1981).

Nevertheless, Paper argues that section 8371 falls within an exception to the general retroactivity rule in that it is "procedural, remedial or curative," and, thus applies to litigation pending on the date it became effective. This argument relies on the following language of the Pennsylvania Supreme Court:

> retrospective laws may be supported when they impair no contract and disturb no vested rights, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.

*Smith v. Fenner*, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960) (quoting *Barnesboro Borough v. Speice*, 40 Pa.Super. 609, 612 (1909)).

Paper first contends that section 8371 is procedural and not substantive because it falls within the procedural portion of the Pennsylvania code, that is, title 42. I cannot argue with the fact that section 8371 falls within title 42; however, I find it to be of little import. If that fact has any probative value, it is counterbalanced by the fact that the statute itself refers to "actions on insurance policies," which must mean that the legislature contemplated a new cause of action arising out of an insurance policy. This procedural argument, standing alone, offers no guidance as to whether the legislature intended section 8371 to be a substantive or a procedural change in the insurer-insured relationship.

Second, Paper argues that section 8371 does not substantively affect the existence of Liberty's liability but only affects the remedies available once liability is found. This argument completely ignores the longstanding fact that prior to July 1, 1990, an insured could not hold its insurer liable for bad faith conduct. There simply was not a cause of action for breach of the covenant of good faith and fair dealing. The sole avenue of redress for an allegedly aggrieved insured was to proceed under the UPIA, which does not contain a private right of action—only the state insurance commissioner is empowered to enforce the provisions of the UPIA. Thus, section 8371 creates a private right of action against an insurer where none existed before. If used, section 8371 certainly would impose new legal burdens on Liberty that did not exist prior to the enactment of that statute.

Even section 8371 provides that before the court can order certain "special damages," it must first find that "the insurer has acted in bad faith toward the insured." Thus, the primary issue under section 8371 is not what damages may be assessed against the insurer but whether or not damages are appropriate in the first place, that is, whether or not the insurer has breached the implied covenant of good faith and fair dealing. Section 8371 was intended to alter substantively, not procedurally, the relationship between the insured and its insurer by imposing legal responsibility for the bad faith conduct of the insurer.

Paper's final argument is surprising in that it actually supports Liberty's contention that to apply section 8371 in this case would be improper. Paper maintains that section 8371 is a curative statute in that it was enacted in response to *D'Ambrosio*. Paper is only half right. Section 8371 was passed as a response to *D'Ambrosio*, but it is not a curative statute. As the court in *D'Ambrosio* required, a new cause of action in tort for the breach of the implied covenant of good faith and fair dealing must be created by the legislature not the courts. *D'Ambrosio*, 431 A.2d at 970. Section 8371 creates the cause of action, it does not merely cure a remedial defect after liability has been established. Accordingly, the application of section 8371 here cannot be supported, and for any allegedly bad faith conduct prior to July 1, 1990, Liberty cannot be held liable under section 8371. Thus, the motion to dismiss count 5 of the counterclaim will be granted with respect to conduct that allegedly occurred prior to July 1, 1990.

■ Paper argues alternatively that even if section 8371 cannot be applied retroactively, Liberty has engaged in bad faith conduct after the effective date of the statute. Paper contends that Liberty's "failure to efficiently, effectively, and pro-

**160**

fessionally manage the outstanding claims continues to date. This ongoing conduct continues to cause overstated reserves and concomitantly continues to damage ... [Paper] ... by, *inter alia*, causing ... its ... experience modification rating to be inflated." Dft.'s mem. in opp. at 8–9. Liberty does not respond to these assertions. I will assume, then, that Liberty agrees with Paper that its post-July 1, 1990, conduct may form the basis for a cause of action under section 8371. Thus, I will deny the motion to dismiss count 5 of the counterclaim with respect to Liberty's post-July 1, 1990, conduct.

As it now seems that both parties agree that if the proper factual predicates are found as part of Paper's other claims, a recovery of punitive damages would be appropriate, I see no reason to belabor this point of initial contention and will deny Liberty's request to strike Paper's punitive damages claims.