Patti M. ROTTMUND, Executrix of the Estate of David R. Artz, Deceased, Plaintiff,

v.

CONTINENTAL ASSURANCE COMPANY, Defendant.

Civ. A. No. 89–5970.

United States District Court, E.D. Pennsylvania.

Aug. 4, 1992.

Order Denying Reconsideration and Certification Dec. 14, 1992.

James F. Mundy and Kevin P. McCarty, Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, PA, for plaintiff.

Timothy R. Coyne, Stephen C. Baker; and Michael Saltzburg, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

■ In its third motion *in limine*, defendant Continental Assurance Company moves the Court to bar Plaintiff from pursuing any claim for special damages under 42 Pa.C.S.A. § 8371. Defendant argues that Plaintiff is barred from seeking damages under Section 8371 because Defendant's denial of Plaintiff's claim occurred on March 30, 1989, well before the statute's enabling date of July 1, 1990.[1] Plaintiff

opposes Defendant's motion arguing that Defendant engaged in at least two additional acts of bad faith after July 1, 1990.

■ When it decided *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), the Pennsylvania Supreme Court declined to create a new cause of action in Pennsylvania insurance law for "bad faith." *D'Ambrosio*, 431 A.2d at 970. Instead, the court left the creation of a new cause of action to the legislature. *Id.* The legislature responded to the court's suggestion by enacting 42 Pa.C.S.A. § 8371 which creates a new cause of action for bad faith conduct. *Liberty Mutual Insurance Co. v. Paper Manufacturing Co.*, 753 F.Supp. 156, 158 (E.D.Pa.1990). The legislature designated Section 8371 to go into effect on July 1, 1990. *Id.* Section 8371 cannot be applied retroactively. *Id.* Therefore, Defendant cannot be held liable unless its allegedly bad faith acts occurred on or after July 1, 1990.

The issue of retroactivity leads to the question of what constitutes "bad faith." This question has been considered by a number of district courts in the Eastern District of Pennsylvania and two related points of view have developed. One court has held that liability is determined from the date that the defendant insurer initially denied the plaintiff insured's claim. *Wazlawick v. Allstate Insurance Co.*, 1990 WL 294273 (E.D.Pa.1990). If that denial occurred prior to July 1, 1990, then the insured has no cause of action. *Id.* Another court has held that an insurer can be held liable for continuing bad faith acts that occur after July 1, 1990, even if the initial denial of the claim occurs before the enabling date. *Liberty Mutual Insurance Co. v. Paper Mfg. Co.*, 753 F.Supp. 156 (E.D.Pa.1990); *see also Shamusdeen v. The Hartford Insurance Co.*, 1991 WL 108675 (E.D.Pa.1991). It has been held,

---

1. In footnote four on page four of Defendant's memorandum in support of its third motion *in limine*, Defendant argues that Plaintiff may not pursue a Section 8371 claim because she is not an insured or beneficiary under the policy in question. The Court notes that plaintiff Patti

Rottmund is acting on behalf of the insured's estate as executrix. Plaintiff's claim therefore is proper. *Wilkes–Barre General Hospital v. Lesho*, 62 Pa.Cmwlth. 222, 435 A.2d 1340, 1342 (1981); *Finn v. Dugan*, 260 Pa.Super. 367, 394 A.2d 595, 596 (1978).

however, that initially denying the claim and subsequently reasserting that denial after July 1, 1990 does not constitute continuing acts of bad faith giving rise to liability. *American Int'l Ins. Underwriters Corp. v. Zurn Indus., Inc.*, 771 F.Supp. 690, 703 (W.D.Pa.1991); *see also Wazlawick v. Allstate Insurance Co.*, 1990 WL 294273 (E.D.Pa.1990). The post-enabling date activity must be separate acts of bad faith, not a continuation of a previous denial. *Id.*

■ The issue of what constitutes post-enabling date activity giving rise to liability under Section 8371 has not been addressed by either the Third Circuit or Pennsylvania appellate courts. As I stated in *Lombardo v. State Farm Mut. Auto. Ins. Co.*, 800 F.Supp. 208 (E.D.Pa.1992), I find the approach developed by my colleagues persuasive and will adopt it as my own. For purposes of applying Section 8371, one must look to the date on which the defendant insurance company first denied the insured's claim in bad faith. If that date is prior to July 1, 1990, the insured's claim under Section 8371 is barred. If the insurer denies the claim prior to July 1, 1990 and then reaffirms that denial after July 1, 1990, the insured's claim is also barred. If the insurer denies the claim before July 1, 1990 and then undertakes additional acts of bad faith, the insurer can be held liable for those additional acts under Section 8371 if the acts occur after the July 1, 1990 enabling date.

Applying the foregoing principles to this case, the Court will allow Plaintiff to pursue her claims under Section 8371. Plaintiff argues that in addition to denying her claim, Defendant engaged in two additional acts of bad faith which occurred after July 1, 1990. Plaintiff has presented a claim which, if proved, could possibly lead to liability for Defendant under Section 8371.

Therefore, the Court will deny Defendant's third motion *in limine.*

## MEMORANDUM AND ORDER DENYING RECONSIDERATION AND CERTIFICATION

Plaintiff, Patti M. Rottmund, is the widow of David R. Artz and the executrix of his estate. Defendant Continental Assurance Company (Continental) is the issuer of a life insurance policy on the life of David R. Artz. Plaintiff seeks to recover the proceeds of the policy pursuant to section 8811(a) of the Pennsylvania Slayer's Act, 20 Pa.Cons.Stat.Ann. §§ 8801–15 (1975 & Supp.1992). Defendant has opposed Plaintiff's claim on several grounds, including assignment, fraud, illegal purpose, lack of an insurable interest, equitable and promissory estoppel, and waiver. This Court has jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds $50,000.

In its third motion in limine, Continental moved the Court to bar Plaintiff from pursuing any claim for the remedies listed in 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1992).[1] Defendant argued that Plaintiff was barred from pursuing a cause of action under section 8371 because Defendant's denial of Plaintiff's claim occurred on March 30, 1989, well before the statute's effective date of July 1, 1990. The Court, in a memorandum and order dated July 31, 1992 and entered August 4, 1992, denied Continental's motion, holding that because Plaintiff argued that in addition to denying her claim, Continental engaged in two additional acts of bad faith which occurred after July 1, 1990, "Plaintiff has presented a claim which, if proved, could possibly lead to liability for Defendant under Section 8371." Memorandum and Order of July 31, 1992, entered August 4, 1992 at 4.

---

1. "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer." 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1992).

Defendant has moved the Court for reconsideration of that memorandum and order, or, in the alternative, for certification of the order pursuant to 28 U.S.C. § 1292(b). Continental argues that (1) Plaintiff is barred from recovering under section 8371 because this is not an action arising under an insurance policy, and (2) even assuming that this is an action under an insurance policy, neither of the acts of bad faith alleged by Plaintiff give rise to liability under section 8371. For the reasons discussed below, the Court will deny Defendant's motion in its entirety.

## I. Standards Governing Motions for Reconsideration

■ A federal district court has inherent power over interlocutory orders and may modify, vacate, or set aside these orders "when it is consonant with justice to do so." *United States v. Jerry,* 487 F.2d 600, 605 (3d Cir.1973). Because of the interest in finality, however, courts should grant motions for reconsideration sparingly. *See Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C.Cir.1980) In addressing motions for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), the Third Circuit has stated that the purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985). The parties are not "free to relitigate issues which the court has [already] resolved." *Johnson v. Township of Bensalem,* 609 F.Supp. 1340, 1342 (E.D.Pa. 1985). Motions for reconsideration must be served within ten days after the entry of the order. U.S.D.C.E.D.Pa.Local R.Civ.P. 20(g).[2]

## II. "Action Arising Under An Insurance Policy"

Section 8371 provides certain remedies against an insurer "[i]n an action arising under an insurance policy." Defendant argues that Plaintiff cannot assert a claim

under section 8371 because Plaintiff's action does not arise under a contract of insurance. Defendant points to this Court's language in its memorandum and order dated August 27, 1990 in which the Court stated that "the Estate of David Artz is *not* bringing this action pursuant to any contract right.... Rather, the Estate of David Artz is bringing this action pursuant to a statutory right created by the Pennsylvania Slayer's Act." *Rottmund v. Continental Assur. Co.,* 761 F.Supp. 1203, 1209 (E.D.Pa.1990) (emphasis in original). The Court reiterated this conclusion in an order dated July 31, 1992 in which it quoted the above language and held that the four year statute of limitations for contracts found in 42 Pa.Cons.Stat.Ann. § 5525 (1981 & Supp.1992) does not apply to this action. Since Plaintiff asserts a statutory cause of action, and the Pennsylvania Slayer's Act does not provide a limitation, the Court held that the six-year residual statute of limitations found at 42 Pa.Cons.Stat.Ann. § 5527 (1981 & Supp.1992) applies.

Defendant also points to decisions in other jurisdictions concerning the tort of bad faith conduct of insurers that hold that the duty of good faith and fair dealing of an insurer derives from and exists solely because of a contractual relationship between the parties. Where no such relationship exists, the insurer is not liable for bad faith. *See, e.g., Austero v. National Casualty Co.,* 62 Cal.App.3d 511, 133 Cal.Rptr. 107 (1976). Defendant presumably argues that no contractual relationship exists between it and Plaintiff.

Both parties have changed their characterization of this action in the course of this litigation to support their arguments on various motions. Plaintiff has maintained throughout that her action is a statutory one, arising under the Pennsylvania Slayer's Act, but now asserts that it is also an action under an insurance policy so that she may recover under section 8371. De-

2. The Clerk entered the Court's July 31, 1992 order concerning Defendant's third motion in limine on August 4, 1992. Defendant served its motion for reconsideration on Plaintiff's counsel on August 18, 1992. Because the time for

service under Local Rule 20(g) is less than eleven days, Saturdays, Sundays and legal holidays are not counted. Fed.R.Civ.P. 6(a). Therefore, Defendant's motion is timely.

fendant has maintained throughout that Plaintiff's claim, and its defenses to that claim, are subject to and dependent upon principles of contract law, but now asserts that Plaintiff's claim is not an action under a contract of insurance to support its argument that Plaintiff cannot pursue its bad faith claim under section 8371.

■ The Court concludes that attempts to characterize this action as either exclusively an insurance contract action or exclusively a statutory action is not helpful because this action involves elements of both insurance contract law and statutory law. To succeed on her claim for the proceeds of the Continental insurance policy, Plaintiff must prove that Continental had a contractual obligation to pay the proceeds of the insurance policy to the named beneficiary. Continental has raised several defenses to that claim that are dependent upon principles of insurance contract law. Plaintiff must also prove that the named beneficiary in the insurance policy is a "slayer" within the meaning of section 8801 of the Pennsylvania Slayer's Act so that she can invoke the language of section 8811(a) that directs the payment of the insurance proceeds from the slayer to the estate of the decedent.[3] This action, then, involves an interplay between an insurer's contractual obligation under an insurance policy to pay insurance proceeds on the one hand, and entitlement of a decedent's estate to those insurance policy proceeds by virtue of a statute on the other hand. The Court holds, therefore, that this lawsuit is "an action arising under an insurance policy" within the meaning of 42 Pa.Cons.Stat. Ann. § 8371 (1975 & Supp.1992).

Furthermore, were the Court to accept Defendant's argument that an action under the Slayer's Act is not an action under an insurance policy, no person who brought an action pursuant to section 8811 of the Pennsylvania Slayer's Act would be able to assert a claim for the remedies provided by section 8371 to compensate for an insurer's bad faith. Insurers' bad faith conduct in these cases would go unpunished. There is nothing in the statute, its legislative history, or case law to support this result. To the contrary, the legislature enacted section 8371 to create a new cause of action for bad faith on the part of insurers because there was no such remedy in the common law of Pennsylvania. *See D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins Co.*, 494 Pa. 501, 431 A.2d 966 (1981). To hold that a person who brings an action under the Pennsylvania Slayer's Act cannot assert a claim for an insurer's bad faith would be contrary to the purpose of section 8371.

### III. "Bad Faith"

Defendant argues that neither of the acts that Plaintiff alleged that Defendant committed after July 1, 1990, the effective date of the act, qualify as actionable "bad faith" within the meaning of section 8371. Section 8371 does not define the term "bad faith." Pennsylvania statutes, cases, and rules of statutory construction, however, provide substantial guidance.

The Pennsylvania rules of statutory construction provide that words and phrases that "have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning...." 1 Pa.Cons.Stat.Ann. § 1903 (Supp.1992). In the insurance context, the term "bad faith" has acquired a peculiar and universally acknowledged meaning:

> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

---

**3.** "Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy ... of insurance on the life of the decedent ... shall be paid to the estate of the decedent, unless the policy ... designates some person not claiming through the slayer as alternative beneficiary to him." 20 Pa.Cons.Stat.Ann. § 8811(a) (1975).

*Black's Law Dictionary* 139 (6th ed. 1990) (citations omitted). *See, e.g., Washington v. Group Hospitalization, Inc.,* 585 F.Supp. 517, 520 (D.D.C.1984) ("To recover under the tort of bad faith refusal to pay, plaintiff must show that defendant did not have a reasonable basis for denying benefits under the policy and that it knew or recklessly disregarded its lack of a reasonable basis when it denied the claim."); 3 Appelman, *Insurance Law & Practice* § 1612 at 368 (1967 & Supp.1991) (bad faith means frivolous or unfounded refusal to pay, lack of good faith investigation into fact, failure to communicate with claimant).

The Pennsylvania rules of statutory construction also provide that "when the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... (5) ... other statutes upon the same or similar subjects." 1 Pa.Cons.Stat. Ann. § 1921 (Supp.1992). Section 1171.5 of the Pennsylvania Unfair Insurance Practices Act, Pa.Stat.Ann. tit. 40, §§ 1171.1–.15 (1992) defines unfair methods of competition and unfair or deceptive acts or practice in the business of insurance.

Finally, most of the cases interpreting and applying 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1992) have been in the context of wrongful refusal to pay, wrongful delay in payment, or unconscionable methods in investigating or adjusting losses for an insured. *See, e.g., Boyadjian v. State Farm Ins. Co.,* 1992 WL 57934 (E.D.Pa.1992) (pre-complaint improper handling of claim); *Barbaro v. The Old Line Life Ins. Co. of America,* 785 F.Supp. 70 (E.D.Pa.1992) (failure to pay policy proceeds); *McGrath v. Federal Ins. Co.,* 1991 WL 117391 (E.D.Pa. June 25, 1991) (failure to pay benefit); *Shamusdeen v. Hartford Ins. Co.,* 1991 WL 108675 (E.D.Pa. June 17, 1991) (failure to take coverage position, failure to pay; failure to properly investigate); *Bryant v. Liberty Mut. Ins. Co.,* 1990 WL 223126 (E.D.Pa. Dec. 20, 1990) (bad faith handling of claim).

Plaintiff alleges two acts of bad faith by Continental: (1) "the intentional misdesignation of a corporate deponent" and (2) "concealment of the absence of new facts and circumstances which would justify the defendant's denial of its own prior allegations regarding the identity of the murderer of David Artz." Plaintiff's Memorandum of Law in Opposition to Motion of Defendant Continental for Reconsideration of the Court's Order of August 4, 1992, Or In the Alternative, Certification of That Order at 8. [hereinafter Pl.Mem. of Law]. Continental argues, that based on the rules of construction, statutes, and case law cited above, there is no evidence that the drafters of section 8371 intended the tort of bad faith to apply to the conduct of an insurer in the litigation arena.

■ For the following reasons, the Court is not convinced that Continental's position is correct. First, courts have looked to the rules of construction, the Pennsylvania Unfair Insurance Practices Act, and case law from other jurisdictions that recognize the tort of bad faith conduct on the part of an insurer to show that there are standards for judges to apply to determine the meaning of bad faith in order to reject claims that section 8371 is unconstitutionally vague. *See, e.g., Coyne v. Allstate Ins. Co.,* 771 F.Supp. 673 (E.D.Pa.1991). There is nothing in the materials cited above that suggests, much less conclusively holds, that section 8371 does not cover insurer misconduct during litigation after the denial of a claim. To the contrary, there are indications that section 8371 does cover bad faith "litigation conduct."

Second, one such indication that section 8371 does cover acts of bad faith during litigation is the case of *Kauffman v. Aetna Casualty & Surety Co.,* 794 F.Supp. 137 (E.D.Pa.1992). In *Kauffman,* Judge Pollak noted that "this case presents an unusual situation in that plaintiffs allege bad faith, *not in the pre-litigation handling of their claim, but in conduct that occurred during the pendency of litigation,* at a stage when Aetna's declaratory judgment action was before the Third Circuit." *Id.* at 140 (emphasis added). The Kauffmans alleged three acts of bad faith: (1) Aetna's insistence on proceeding to arbitration, rather than paying the proceeds, (2) Aet-

na's opposition to the Kauffmans' motion to confirm the arbitration award in a state court, and (3) Aetna's refusal to pay the remaining amount of the arbitration award until the Third Circuit rendered a decision on Aetna's appeal. *Id.* Judge Pollak's discussion of the Kauffmans' claims on their merits, even though he ruled that Aetna did not act in bad faith, provides an indication, albeit implicit, that section 8371 covers postdenial of claim conduct in the litigation arena.

Third, in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981) the court held that the provisions of the Pennsylvania Unfair Insurance Practices Act defining unfair methods of competition and unfair or deceptive acts or practices to include numerous forms of conduct, including unfair claim settlement or compromise practices, serve to deter bad faith conduct adequately and need not be supplemented by a judicially-created cause of action for bad faith. *Id.* 431 A.2d at 970. The Pennsylvania legislature rejected the reasoning of the Pennsylvania Supreme Court and created a cause of action against insurers for bad faith conduct. The enactment of this statute provides an indication that the legislature did not believe that the conduct listed in the Unfair Insurance Practices Act was intended to define the limits of what constituted bad faith conduct.

Finally, the Pennsylvania rules of statutory construction state that, in general, the "provisions of a statute should be liberally construed to effect their objects and purposes and to promote justice." 1 Pa.Cons. Stat.Ann. § 1928(c) (Supp.1992). The purpose of section 8371 is to provide persons with a remedy against the bad faith conduct of insurers. Remedial statutes like section 8371 should be broadly construed. The narrow construction of section 8371 proposed by Defendant runs counter to rule of liberal statutory construction and would defeat, rather than effectuate the purpose of the statute, and would hinder, rather than promote, justice.

■ Defendant argues that the Federal Rules of Civil Procedure provide the exclu-

sive remedy for its alleged misdesignation of a corporate deponent and that the doctrine of preemption prevents section 8371 from shaping the discovery practice of litigants before this Court. It points to Federal Rules of Civil Procedure 26(g) and 37(a)(2) which provide for sanctions for harassment, unnecessary delay, or needless increase in the cost of litigation in the course of discovery, and allow a party to seek an order compelling a designation, respectively. Neither party or this Court has been able to locate any authority that suggests that the Federal Rules of Civil Procedure are the exclusive remedy under the circumstances. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), cited by Defendant, addresses the question of whether to apply federal or state rules of civil procedure in diversity actions. Here, section 8371 is a substantive statute, not a procedural one, that creates a separate cause of action for an insurer's bad faith conduct. The Federal Rules of Civil Procedure address the conduct of actions in federal courts in general. There is no indication that they preempt a state law that attempts to address a very specific problem: bad faith conduct of insurers, even where that bad faith conduct occurs in the context of litigation.

Defendant next argues that Plaintiff's second allegation of bad faith conduct is not covered by section 8371 because, assuming that conduct occurred, it occurred before July 1, 1990, the effective date of the statute. Continental characterizes Plaintiff's second allegation of bad faith conduct as being a "change in litigation position." Defendant's Memorandum of Law at 10. In Plaintiff's complaint filed in this action, Plaintiff alleged that the murder of David Artz "was organized and implemented by or on behalf of CHC, Lombardo, and Kramer." Complaint ¶ 25. Continental answered that it was "without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph twenty-five of the Complaint and they are therefore denied." Answer ¶ 25. Plaintiff claimed that Continental, in a previous action against Conestoga Holding Company, Samuel Lom-

bardo, and John Kramer, Civil Action No. 85–4867 (E.D.Pa.), made the same allegation that Plaintiff was making in this action and that its answer was therefore a bad faith change in litigation position. Continental argues that assuming, for the sake of argument, that its answer constitutes a bad faith change in position, the date Continental filed its answer would be the latest time of the alleged bad faith conduct. Because Continental filed its answer on April 23, 1990, three months before section 8371 became effective, it argues that its answer cannot, as a matter of law, form the basis for a section 8371 claim.

Plaintiff, however, characterizes her second allegation of bad faith differently. Plaintiff does not allege that Continental's answer constitutes bad faith conduct, but that Continental has concealed the absence of new facts and circumstances which would justify its denial of its own prior allegations regarding the identity of the murderer of David Artz. Plaintiff alleges that this concealment occurred after July 1, 1990.

Because of the different characterizations by the parties, the Court is not prepared to rule as a matter of law that Plaintiff's second allegation of bad faith conduct cannot form the basis for a claim under section 8371. The Court will allow both parties to present evidence and argument at trial on this, as well as the first, allegation of bad faith conduct after which it will be better able to resolve the question.

Finally, Continental argues that the common law "mend the hold" doctrine invoked by this Court in its order dated August 20, 1991 provides the remedy for Continental's alleged bad faith change in litigation position and that section 8371 does not cover this situation. This Court has held that the common law doctrine of "mend the hold" set forth in *Harbor Insurance Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir.1990) applies to this case. The jury will be instructed that Continental is not al-

lowed in this litigation to change the position that it took in the prior litigation against CHC, Lombardo, and Kramer unless the change is based on new information that could not have been obtained at the time of the prior action or other changed circumstances. Order of August 20, 1991 at 8.

Assuming for the sake of argument that Plaintiff's characterization of Continental's second alleged act of bad faith conduct is accurate (that Continental concealed the absence of new information) then the mend the hold doctrine and section 8371 operate independently of each other. The mend the hold doctrine, if Plaintiff sustains its burden of proof, would bind Defendant to the allegations that it made in Civil Action No. 85–4867 regarding the identity of the killer of David Artz. Section 8371, again if Plaintiff sustained its burden of proof, would operate to levy a monetary sanction on Continental for its efforts to conceal the absence of any good faith justification for its present denial of its earlier allegations.

For the foregoing reasons, then, the Court will deny Continental's motion for reconsideration. The Court adheres to the ruling announced in the order dated July 31, 1992 and entered August 4, 1992 denying Defendant's third motion in limine: the Court will allow Plaintiff to pursue her claims under section 8371.[4]

## IV. Certification

Defendant moves the Court for certification pursuant to 28 U.S.C. § 1292(b) of the order entered August 4, 1992. The Court will deny Defendant's motion for the following reasons.

Section 1292(b) provides that in order for a district judge to allow a party to seek an immediate appeal of an interlocutory order the order must "involve[ ] a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate

---

4. The Court emphasizes that it has not determined the merits of Plaintiff's allegations. The Court merely holds that this is "an action under an insurance policy" for the purposes of section 8371 and that it declines to adopt Continental's

arguments that Plaintiff's allegations do not, as a matter of law, fall within the meaning of "bad faith." The Court will hear evidence and argument on the merits of Plaintiff's allegations at trial.

termination of the litigation...." Certification is only appropriate in exceptional circumstances. *Max Daetwyler Corp. v. Meyer*, 575 F.Supp. 280, 283 (E.D.Pa.1983). The party seeking certification has the burden of showing that exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment. *See id.* at 282; *Chalfin v. Beverly Enterprises, Inc.*, 745 F.Supp. 1117, 1122 (E.D.Pa.1990). Defendant has failed to satisfy its burden because an immediate appeal from the order entered August 4, 1992 will not materially advance the ultimate termination of the litigation.

Section 1292(b) "is designed to allow for early appeal of a legal ruling when resolution of the issue may provide more efficient disposition of the litigation." *Ford Motor Credit Co. v. S.E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir.1981). Where discovery is complete and the case is ready for trial an interlocutory appeal can hardly advance the ultimate termination of the litigation. *Caldwell v. Seaboard Coastline Railroad*, 435 F.Supp. 310, 312 (W.D.N.C.1977). *See also Lorentz v. Westinghouse Elec. Corp.*, 472 F.Supp. 954, 956 (W.D.Pa.1979) (certification denied when discovery was complete and trial was two months hence). Furthermore, where the issue involved in the interlocutory order is only one of many triable issues, an interlocutory appeal will not provide a more efficient disposition of the litigation. *See id.*

In this case the issues involving section 8371 raised in the order entered August 4, 1992 are only a few of the several issues involved in this litigation. The more important and potentially time-consuming aspects of the case do not implicate the bad faith issue, but rather involve Plaintiff's and Defendant's presentation of evidence regarding Plaintiff's claim and Defendant's defenses under principles of insurance con-

tract law and the Slayer's Act. Furthermore, discovery was complete on January 31, 1991 and the trial is scheduled for January 11, 1993. Under these circumstances, an interlocutory appeal would not materially advance the ultimate termination of the litigation.[5]

### V. Conclusion

This lawsuit is "an action arising under an insurance policy" within the meaning of 42 Pa.Cons.Stat.Ann. § 8371 (Supp.1992). Plaintiff has presented allegations of bad faith conduct which, if proved, could possibly lead to liability for Defendant under section 8371. Therefore, the Court will deny Defendant's motion for reconsideration. Furthermore, an interlocutory appeal of these issues would not materially advance the ultimate termination of this lawsuit. Therefore, the Court will deny Defendant's motion for certification pursuant to 28 U.S.C. § 1292(b).

---

5. Because the Court concludes that certification would not materially advance the ultimate termination of the litigation, the Court does not need to decide whether the order involves a controlling question of law or whether there exists substantial grounds for difference of opinion.