**John KRISA, Plaintiff,**

v.

**THE EQUITABLE LIFE ASSURANCE SOCIETY, Defendant.**

No. 97–CV–1729.

United States District Court,
M.D. Pennsylvania.

May 23, 2000.

Alan M. Feldman, Feldman, Shepherd, Wohlgelernter & Herman, Philadelphia, PA, for plaintiff.

Platte B. Moring, III, Allentown, PA, for defendant.

## MEMORANDUM

VANASKIE, Chief Judge.

This action pending in this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332 concerns two disability insurance policies purchased by plaintiff John Krisa ("Krisa") from defendant Equitable Life Assurance Society ("Equitable"). Krisa claims entitlement to total disability benefits under the policies on the ground that labile hypertension renders him unable to pursue his chosen profession as a trial lawyer. Contending that the applicable test under the policies is whether Krisa was unable to engage in *all* the substantial and material duties of his regular occupation at the time he became disabled, and asserting that labile hypertension did not preclude Krisa from engaging in certain of the activities that he described as part of the substantial and material duties of his legal practice at the time he applied for disability benefits, Equitable has denied Krisa's claim. This action, which seeks to recover damages from November 24, 1997 until the present, is a sequel to an earlier action filed by Krisa, docketed to No. 3:97-CV-1825.[1]

Krisa's complaint asserts five causes of action: (1) breach of contract; (2) violation of Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371, in the denial of his total disability claim; (3) fraud and/or negligent misrepresentation in connection with the sale of the policies to him; (4) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

---

1. Krisa's suit docketed to No. 3:97-CV-1825 will be referred to as *Krisa I* for the purposes of this opinion. Krisa's action docketed to No. 3:99-CV-1729 will be referred to as *Krisa II*.

("UTPCPL"), 73 P.S. §§ 201-1, *et seq.;* and (5) wrongful use of civil proceedings under 42 Pa.C.S.A. § 8351 *et seq.* Equitable has moved to strike and dismiss Krisa's bad faith, wrongful use of civil proceedings, and fraud and/or negligent misrepresentation claims. Equitable also seeks to strike and dismiss Krisa's emotional distress and other non-contractual damages claims contained in Counts I, II and IV.

In light of precedent holding that Pennsylvania's statutory cause of action covering bad faith conduct by insurers should be broadly construed so as to effectuate the purpose of that statute, Equitable's conduct occurring after *Krisa I* was filed could be the basis for liability under the statute. Accordingly, Equitable's motion to strike and dismiss Count II will be denied. Equitable's motion to strike and dismiss Krisa's wrongful use of civil proceedings claim will also be denied because Equitable's filing of a motion to amend its counterclaim in *Krisa I* accusing Krisa of fraud in the application constituted the "initiation" of a civil proceeding for purposes of Pennsylvania's wrongful use of civil proceedings statute, and Equitable's withdrawal of the motion to amend constituted a "favorable termination" of the proceedings, thereby entitling Krisa to litigate whether the claim was asserted in violation of 42 Pa.C.S.A. § 8351, *et seq.* Consistent with this Court's holding in *Krisa I,* Equitable's motion to strike and dismiss Krisa's fraud and negligent misrepresentation claims will be denied. Because emotional distress damages are not recoverable in a contract action or under Pennsylvania's Bad Faith Statute and the UTPCPL, Equitable's motion to strike those claims from Counts I, II and IV will be granted.

## I. BACKGROUND

Plaintiff, John Krisa, commenced an action in the Lackawanna Court of Common Pleas on October 23, 1997, alleging breach of contract, bad faith, fraud and/or negligent representation and violation of the UTPCPL in connection with Equitable's denial of insurance benefits based upon its determination that Krisa was not totally disabled under the terms of insurance policies it issued. (*Krisa I,* Dkt. Entry 1.) Equitable removed that case to federal court on December 1, 1997. (*Id.*)

In *Krisa I,* Equitable asserted that Krisa, if successful, could only recover disability benefits from the date of his disability, December 6, 1996, to the date *Krisa I* was filed, and that Krisa's only remedy for Equitable's continuing refusal to pay benefits accruing thereafter was to file additional lawsuits. (Complaint, Dkt. Entry 1 at 2-3.)[2] In the event that this Court agreed with Equitable's contention that *Krisa I* applied only to damages between his injury and the filing of that action, Krisa, on October 4, 1999, filed *Krisa II* to secure disability benefits and other damages for which he contends Equitable is responsible from November 24, 1997 until the present. (*Id.* at 3-4.)

On October 28, 1999, Equitable filed a motion to strike and dismiss Krisa's pleadings and a memorandum of law in support of that motion. (Dkt. Entries 4 & 5.) On November 10, 1999, Krisa filed a memorandum of law in opposition to defendant's motion to strike and dismiss. (Dkt. Entry 7.) On November 26, 1999, Equitable filed a reply brief. (Dkt. Entry 9.)

## II. DISCUSSION

### A. Standard

In deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must draw all reasonable inferences from the facts pled in the complaint and construe them in the light most favorable to the claimant. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991); *Truhe v.*

---

2. A summary of the factual background of *Krisa I* is set forth in this Court's April 6, 2000 Order which granted in part and denied in part Equitable's motion for summary judgment. (*Krisa I,* Dkt. Entry 138.)

*Rupell,* 641 F.Supp. 57 (M.D.Pa.1985). The Court, however, need not accept as true "conclusory allegations of law, unsupported conclusions and unwarranted inferences." *Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 449-50 (M.D.Pa. 1991). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa.1989). The Rule 12(b)(6) movant carries the burden of showing the legal insufficiency of the claims asserted. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir. 1980). A Rule 12(b)(6) motion will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pennsylvania House,* 760 F.Supp. at 449-50.

Equitable also seeks to strike Krisa's pleadings pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." F.R.Civ.P. 12(f). One district court summarized he standard of review when deciding a motion to strike as follows:

"A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." *River Road Devel. Corp. v. Carlson Corp.–Northeast,* No. 89–7037, 1990 WL 69085 at *2 (E.D.Pa., May 23, 1990). Motions to strike, however, are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Id., citing* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure at 1382 (1969); *see also Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986); *Glenside West Corp. v. Exxon Co., U.S.A., Div. of Exxon Corp.,* 761 F.Supp. 1100, 1115 (D.N.J.1991).

"Partly because of the practical difficulty of deciding cases without a factual record it is well established that striking a pleading should be sparingly used by courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *United States v. Consolidation Coal Co.,* No. 89–2124, 1991 WL 333694 at *1 (W.D.Pa., July 5, 1991). "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent'." *FDIC v. White,* 828 F.Supp. 304, 307 (D.N.J.1993), *quoting Cipollone,* 789 F.2d at 188.

*North Penn Transfer, Inc. v. Victaulic Company of America,* 859 F.Supp. 154, 158 (E.D.Pa.1994).

## B. Count II–Bad Faith in Handling Insurance Claims

Pennsylvania has established a statutory remedy for bad faith on the part of insurance companies. Section 8371 of title 42 Pa.C.S.A. provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorneys fees against the insurer.

The standard for determining insurer bad faith under § 8371 was recently restated in *Keefe v. Prudential Property and Casualty Ins. Co.,* 203 F.3d 218, 225 (3d Cir.2000)(*citing Romano v. Nationwide Mut. Fire Ins. Co.,* 435 Pa.Super. 545, 646 A.2d 1228, 1232 (1994)(*quoting* Black's Law Dictionary 139 (6th Ed. 1990))):

[T]he term bad faith includes 'any frivolous or unfounded refusal to pay proceeds of a policy.' 'For purposes of an action against an insurer for failure to

pay a claim, such conduct imparts a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self interest or ill will; mere negligence or bad judgment is not bad faith.' Therefore, in order to recover under a bad faith claim, a plaintiff must show (1) that the defendant did not have a reasonable basis for denying benefits under the policy; and (2) that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.

In *O'Donnell v. Allstate Insur. Co.*, 734 A.2d 901, 904 (Pa.Super.1999), the Pennsylvania Superior Court examined "whether in an action for bad faith against an insurer, the jury is restricted to considering only evidence of bad faith which occurred prior to the filing of the lawsuit, or, whether it may also consider evidence of an insurer's bad faith conduct occurring during the pendency of litigation." In *O'Donnell*, the court stated that "a narrow construction of section 8731 . . . is contrary to the purpose of the statute to deter bad faith conduct of insurers." *Id.* at 904. Based upon "the lack of any restrictive language limiting the scope of bad faith conduct to that which occurred prior to the filing of a lawsuit," the court concluded:

> the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation. In so finding, we refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured.

*Id.* at 906. Thus, *O'Donnell* supports the proposition that "the conduct of an insurer during the pendency of litigation may be construed as evidence of bad faith under section 8371." *Id.* at 907.

In *O'Donnell*, the Superior Court found persuasive the reasoning of *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104 (E.D.Pa.1992), where "the district court attempted to predict the course of Pennsylvania law on this very issue."

*O'Donnell*, 734 A.2d at 907. In *Rottmund*, the widow and executrix of the decedent's estate brought suit against Continental Assurance Company ("Continental"), seeking to recover the proceeds of her husband's life insurance policy and advancing bad faith claims in connection with Continental's litigation conduct. *Rottmund*, 813 F.Supp. at 1108–09. Continental filed a motion in limine seeking to preclude Rottmund's bad faith claims because "there is no evidence that the drafters of section 8371 intended the tort of bad faith to apply to the conduct of an insured in the litigation arena." *Id.* at 1109. The district court disagreed, noting that there was no precedent "that suggests, much less conclusively holds, that section 8371 does not cover insurer misconduct during litigation after the denial of a claim. To the contrary, there are indications that section 8371 does cover bad faith 'litigation conduct.'" *Id.* The *Rottmund* court further stated:

> The Pennsylvania rules of statutory construction state that, in general, the "provisions of a statute should be liberally construed to effect their objects and purposes and to promote justice." 1 Pa. Cons. Stat. Ann. § 1928© (Supp.1992). The purpose of section 8371 is to provide persons with a remedy against the bad faith conduct of insurers. Remedial statutes like section 8371 should be broadly construed. The narrow construction of section 8371 proposed by Defendant runs counter to [the] rule of liberal statutory construction and would defeat, rather than effectuate the purpose of the statute, and would hinder, rather than promote, justice.

*Id.* at 1110.

Equitable relies on *Slater v. Liberty Mutual Ins. Co.*, No. 98–CV–1711, 1999 WL 178367, 1999 U.S. Dist. Lexis 3753 (E.D.Pa. March 30, 1999), for the proposition that "the Pennsylvania Supreme Court would not hold that Section 8371 permits recovery for discovery abuses by an insurer or its lawyer in defending a claim predicated on its alleged prior bad

faith handling of an insurance claim." (Equitable's Motion to Strike and Dismiss, Dkt. Entry 4, at 4.) This position was echoed by *O'Donnell,* in which the court stated that "we find that the statute clearly does not contemplate actions for bad faith based upon allegations of discovery violations." *O'Donnell,* 734 A.2d at 908. While discovery violations alone are not a sufficient basis for a bad faith claim, even *Slater* recognized that an insurer could be held liable "for bad faith conduct arising in the insurer-insured relationship which happens to occur during the pendency of an action, or for initiating an action against an insured in a bad faith effort to evade a duty owned under a policy." *Slater,* 1999 WL 178367 *2, n. 3, 1999 U.S. Dist. Lexis at *6, n. 3.

■ In the instant case, Krisa is advancing bad faith claims based on more than discovery abuses. Specifically, Krisa "alleges that Equitable wrongly responded to plaintiff's Complaint in *Krisa I* with a counterclaim asserting, among other things, that plaintiff had committed fraud in his applications to Equitable for disability insurance." (Krisa's Response to Equitable's Motion to Strike and Dismiss, Dkt. Entry 7, at 5.) Krisa "further alleges that Equitable's allegations were false, baseless and fraudulent...." (*Id.* at 6.) Krisa has asserted more than just discovery abuses on the part of Equitable. Moreover, in light of the policy of liberal construction of statutes so as to effectuate the statute's purpose and the Pennsylvania Superior Court's determination "that the conduct of an insurer during the pendency of litigation may be construed as evidence of bad faith under section 8371," Krisa's claims are not barred by Pennsylvania law. Accordingly, because Krisa has asserted facts from which a jury could conclude that Equitable used litigation in bad faith to avoid insurance obligations, Equitable's motion

to strike and dismiss Count II will be denied.

## C. Wrongful Use of Civil Proceedings.

■ Equitable seeks to dismiss Count V of Krisa's Complaint, which charges Equitable with wrongful use of civil proceedings pursuant to 42 Pa.C.S.A. § 8351 *et seq.,* which states:

(a) Elements of action. -- A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required.--The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

Equitable contends that it did not procure, initiate or continue civil proceedings against Krisa with respect to fraud in his application for disability insurance. (Dkt. Entry 4 at 3.) Equitable further contends that no such proceedings were ever terminated in Krisa's favor. (*Id.* at 4.)

While Equitable never filed its counterclaim for fraud in the application, Equitable did file a motion to amend its pleadings which contained a copy of its proposed counterclaim of fraud in the application. (*Krisa I,* Dkt. Entry 35.) The proper procedure for Equitable to advance a claim of fraud in the application was to do so by way of counterclaim.[3] Having not asserted

---

**3.** Federal Rule of Civil Procedure 13(a), which governs compulsory counterclaims, states that:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any oppos-

a fraud in the application claim in its original answer, Equitable was required to seek leave to amend its responsive pleading to assert the counterclaim. The triggering event for application of the Pennsylvania wrongful use of civil proceedings statute is the "procurement [or] initiation of ... civil proceedings ...." 42 Pa. C.S.A. § 8351. Notably, the statute does not require the filing of a complaint or counterclaim, but only requires that the defendant procure or initiate a civil proceeding. By moving to amend its answer to add a fraud in the application claim against Krisa, Equitable procured or initiated a civil proceeding against him: there was a request to a court of law that Equitable be allowed to charge Krisa with fraud. The fact that Equitable withdrew the claim before the Court could rule on its motion does not alter the fact that there was pending in a public court record an accusation that Krisa perpetrated a fraud when he applied for disability insurance benefits. Recognition that moving for leave to amend a pleading to assert or allege frivolous claims constitutes the initiation of a civil proceeding is consistent with the purpose of the wrongful use of civil proceedings law, which is to avoid the pursuit of vexatious claims that cause a party annoyance, embarrassment and undue expense.

Moreover, Equitable's withdrawal of the proposed counterclaim for fraud in the application is a favorable termination of the proceedings it had instituted. "Whether withdrawal or abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought ... depends on the circumstances under which the proceedings are withdrawn." *Bannar v. Miller*, 701 A.2d 232, 239 (Pa.Super.1997) (*citing Rosenfield v. Pennsylvania Auto. Ins. Plan*, 431 Pa.Super. 383, 389, 636 A.2d 1138 (1994) (*quoting* Restatement (Second) of Torts § 674 cmt. j (1977))). For example, abandonment of a claim pursuant to an agreement with the opposing party or because of circumstances beyond the complaining party's control may preclude a decision that the proceedings terminated in favor of the opposing party. *Rosenfield*, 431 Pa.Super. at 390, 636 A.2d at 1142. But absent some circumstance suggesting that an abandonment of a claim is unrelated to the relative merits of the claim, a voluntary withdrawal may be considered a favorable termination for the accused party. For example, the *Bannar* Court concluded that the factual circumstances of that case:

> lead to a determination that the voluntary dismissal constitutes a final determination in favor of the persons against whom the proceedings were brought; they tend to establish neither appellant nor his attorney were attempting to properly adjudicate the claim. A last-second dismissal in the face of imminent defeat is not favorable to appellant. The Millers did not answer the bell in the fight they started, which is a victory for the other side.

*Bannar*, 701 A.2d 232 at 239.

At this stage of the proceedings in this case, there is no suggestion that Equitable abandoned its proposed fraud in the application claim for a reason unrelated to the relative merits of that claim. For example, there is no allegation that it was with-

---

ing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.
"Failure to assert a compulsory counterclaim before the related claim proceeds to judgment results in the barring of the counterclaim." *James E. McFadden, Inc. v. Bechtel Power Corp.*, No. 85–6945, 1986 WL 4195 at *3 (E.D.Pa. April 3, 1986). Because Equitable's

counterclaim for fraud in the inducement arises out of the transaction or occurrence that is the subject of Krisa's claim, Equitable's counterclaim for fraud in the inducement would be waived if not asserted in this action. *See National Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir.1961) (holding that lessee's fraud in the inducement claim should have been pleaded as a compulsory counterclaim where lessor's original claim was for breach of the lease).

drawn pursuant to some agreement with Krisa. Nor is there any averment that the claim was withdrawn because key evidence became unavailable. Because failure to pursue the matter as a counterclaim could preclude Equitable from ever pursuing it by virtue of the compulsory counterclaim rule, Equitable's withdrawal of the claim can certainly be viewed as favorable to Krisa. At this stage of the case, Krisa's allegations are sufficient to support an inference that Equitable's abandonment of the fraud in the application claim constituted a favorable termination of the civil proceedings instituted against him.

In summary, at this stage of the litigation, Krisa has presented a viable claim of wrongful use of civil proceedings. Accordingly, Equitable's motion to dismiss Count V of Krisa's Complaint will be denied.

### D. Extra-Contractual Damages.

■ Equitable seeks to dismiss "allegations of 'great hardship,' 'anxiety, emotional distress, depression, and aggravation of ... physical illness,' and 'compensatory and punitive damages' contained Count I (Breach of Contract), Count II (Bad Faith), and Count IV (violation of the Unfair Trade Practices and Consumer Protection Law)." (Equitable's Reply Memorandum, Dkt. Entry 9, at 4.) "[A] plaintiff may not ordinarily recover emotional distress damages arising from a breach of contract." *Craig v. Salamone*, No.98–CV–3685, 1999 WL 213368 at *10 (E.D.Pa. Apr.8, 1999) (*citing Rodgers v. Nationwide Mut. Ins. Co.*, 344 Pa.Super. 311, 496 A.2d 811, 814 (1985)). In *D'Ambrosio v. Pennsylvania Mut. Ins. Co.*, 494 Pa. 501, 431 A.2d 966, 969 (1981), the Pennsylvania Su-

preme Court recognized that the Pennsylvania legislature passed the Unfair Insurance Practices Act in an effort to curb the bad faith conduct of insurers. Accordingly, because "mental distress damages closely resemble punitive damages," "which would accomplish no more than is already accomplished" by statutory law, the court held that "the count in trespass for alleged bad faith conduct of an insurer, which seeks both punitive damages and damages for emotional distress, must be rejected." *Id.* at 970. In light of the above precedent, the emotional distress claims in Counts I and II of Krisa's Complaint will be stricken.[4] Moreover, because the UTPCPL expressly limits recovery to "actual damages, "[r]ecovery for emotional distress is not permitted" under the UTPCPL. *Bryant v. Woodland*, 111 B.R. 474, 479-80 (E.D.Pa.1990).[5] Accordingly, Krisa's claims for emotional damages contained in Paragraph 41 of Count IV will also be stricken.

### F. Fraud and/or Negligent Misrepresentation (Count III).

Equitable contends that "[t]his Court should dismiss Count III of the Complaint because it is simply a reiteration of the allegations contained in Count III of the Complaint in the first action." (Equitable' Memorandum of Law at 9.) Equitable concludes that "[f]or all of the reasons stated in the Motion, Memorandum of Law, and Reply Memorandum of Law in Support of the Motion for Summary Judgment of [Equitable] on Count III of the Complaint in the First Action, this Court should dismiss Count III of the Complaint in the Second Action." (*Id.*) In *Krisa I*, Equitable's motion for summary judgment on

---

4. Equitable correctly observes at page 8 of its supporting brief (Dkt. Entry 5) that there is no common law cause of action for bad faith under the circumstances presented here. *See D'Ambrosio*, 494 Pa. at 508, 431 A.2d at 970. Thus, Krisa's statement in ¶ 29 of the complaint that Equitable has acted in bad faith in violation of Pennsylvania common law is impertinent. Of course, Krisa may pursue punitive damages under the bad faith statute. *See* 42 Pa. C.S.A. § 8371(2).

5. In *Krisa I,* this Court held that "[b]ecause the statute requires an ascertainable loss of money or property and limits recovery to 'actual damages,' Krisa will not be entitled to recover emotional distress type damages" under the UTPCPL (*Krisa I*, Dkt. Entry 138 at 23.) Consistent with the holding in *Krisa I*, Krisa is may not recover emotional distress damages under the UTPCPL.

Krisa's fraud and negligent misrepresentation claims was denied because "the justifiable reliance issue is properly left for jury resolution." (*Krisa I*, Dkt. Entry 138 at 21.) Consistent with that decision, Equitable's motion to strike and/or dismiss Count III of Krisa's Complaint will be denied.

## III. CONCLUSION

The purpose of section 8371 of 42 Pa. C.S.A. is to provide a remedy for the bad faith conduct of insurers. Section 8371 should be construed broadly so as to effectuate its purpose. Consistent with this principle, the Pennsylvania Superior Court has recognized that the conduct of an insurer during the pendency of litigation may be construed as evidence of bad faith under Section 8371. I find this reasoning persuasive. Accordingly, Equitable's motion to strike and dismiss Krisa's bad faith claim based on its contention that Krisa can not maintain a bad faith claim against Equitable for its conduct as a legal adversary will be denied.

Because Equitable initiated a civil proceeding against Krisa when it filed a motion to amend its answer to include a counterclaim for fraud in the application and those proceedings were terminated in Krisa's favor when Equitable abandoned efforts to add this counterclaim, Equitable's motion to strike and dismiss Krisa's wrongful use of civil proceedings claim will be denied.

Consistent with this Court's decision in *Krisa I*, Equitable's motion to strike and dismiss Krisa's fraud and/or negligent misrepresentation claim will be denied.

Krisa seeks to recover emotional distress damages and other non-contractual damages such as damages for "great hardship," "anxiety," "depression," and "aggravation of his physical illness" in Counts I, II and IV. Typically, emotional distress damages are not recoverable in a contract action. Courts have held that emotional distress damages are not recoverable under 42 Pa.C.S.A. § 8371 because such damages would duplicate damages provided for

by the statute. Moreover, emotional distress damages are not recoverable under the UTPCPL, which expressly limits recovery to actual damages. Accordingly, Equitable's motion to strike the emotional distress claims contained in Counts I, II and IV of Krisa's Complaint will be granted. An appropriate Order follows.

### *ORDER*

**NOW, THIS 23rd Day of May, 2000,** for the reasons set forth in the attached Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Equitable's Motion to Strike and Dismiss Pleadings of the Plaintiff (Dkt. Entry 4) is **GRANTED IN PART AND DENIED IN PART.**

2. Equitable's motion is **GRANTED** as it seeks to dismiss Krisa's emotional distress claims and other non-contractual damages claims contained in Counts I, II and IV. Equitable's motion is **DENIED** as it seeks to strike and dismiss Krisa's Bad Faith claims (Count II), Fraud and/or Negligent Misrepresentation claims (Count III) and Wrongful Use of Civil Proceedings claims (Count V).