Lawrence I. LIVORNESE, M.D., David M. Rogers, M.D., and Chestnut Hill Cardiology Consultants, Ltd., Plaintiffs,

v.

The MEDICAL PROTECTIVE CO., Defendant/Third–Party Plaintiff,

v.

Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund, and John Reed, Third–Party Defendants.

No. 01–CV–3124.

United States District Court, E.D. Pennsylvania.

July 16, 2002.

Robert E. Slota, Law Offices of Robert E. Slota, Bryn Mawr, PA, for Plaintiffs.

Kevin H. Wright, Wright, Young & McGilvery, Blue Bell, PA, for Defendants.

## MEMORANDUM AND ORDER

SCHILLER, District Judge.

This action arises from a medical malpractice suit litigated in state court, resulting in a judgment entered against the current Plaintiffs: Dr. Lawrence I. Livornese, Dr. David M. Rogers, and Chestnut Hill Cardiology Consultants, Ltd. ("the Doctors"). The Doctors then commenced the instant action against their primary insurer, Defendant The Medical Protective Company ("MedPro"), for breach of contract, negligence and bad faith, based on MedPro's conduct in the underlying litigation. MedPro subsequently impleaded Third–Party Defendants the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund and John Reed (collectively "the CAT Fund") for contribution and/or indemnity. Presently before the Court is MedPro's motion to dismiss Plaintiffs' bad faith claim. For the reasons set forth below, I grant MedPro's motion.

## I. BACKGROUND[1]

On May 19, 1999, the Philadelphia Court of Common Pleas entered a $2,798,924 judgment against the Plaintiffs, based on their professional negligence and/or malpractice occurring in 1992.[2] That award encompassed not only the jury's original verdict of $2,085,000 but also substantial delay damages, pursuant to Pennsylvania Rule of Civil Procedure 238. Thereafter, on August 24, 1999, Plaintiffs' insurer, MedPro, paid $400,000 into court toward the judgment, tendering its $200,000 policy limits for each doctor. At least a portion of the judgment has yet to be paid, and postjudgment interest continues to accrue.

In their Amended Complaint, Plaintiffs contend that MedPro, though providing its policy limits, breached its contract, acted in bad faith and negligently handled the underlying suit. In light of Plaintiffs' claims, MedPro impleaded the CAT Fund. The CAT Fund, a statutorily created agency, may provide up to $1,000,000 in coverage to Pennsylvania-based medical professionals incurring professional liability, after the primary insurer has tendered its policy limits.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, MedPro moved to dismiss the Doctors' bad faith claim.

## II. LAW AND DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint that "fails to state a claim

---

1. I have presented the facts in the light most favorable to the Plaintiffs, as required when considering a defendant's Rule 12(b)(6) motion to dismiss.

2. The underlying medical malpractice lawsuit commenced under the caption of *Gunn v. Livornese* in the Philadelphia Court of Common Pleas, Civil Action No. 92–11–0330.

upon which relief can be granted." FED. R.CIV.P. 12(b)(6). A reviewing court should only grant a Rule 12(b)(6) motion if, under any reasonable interpretation of the facts as alleged, the complainant could not earn relief. *See Jairett v. First Montauk Sec. Corp.*, 203 F.R.D. 181, 184 (E.D.Pa. 2001). Thus, the court must assume all facts averred in the complaint as true and grant those facts the benefit of all reasonable inferences. *See Berkovitz v. United States*, 486 U.S. 531, 547, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *see also Lites v. Great Amer. Insur. Co.*, No. Civ.A.00–CV–525, 2000 WL 875698 at *2 (E.D.Pa. June 23, 2000). The court need not defer, however, to a complaint's "bald assertions" or "legal conclusions." *See Pennsylvania v. Rand Fin. Corp.*, No. Civ.A.99–4209, 2000 WL 1521589 at *2 (E.D.Pa. Oct. 3, 2000) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997)).

## B. Discussion

■ The Pennsylvania legislature has created a statutory remedy for an insurance company's bad faith conduct: 42 Pa. C.S.A. § 8371 ("Section 8371"). Section 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insured.

42 PA. CONS.STAT.ANN. § 8371 (1982 & Supp.1996). Though left undefined by the statute, "bad faith toward the insured" consists of: (1) a frivolous or unfounded refusal to pay, (2) a failure to investigate into the facts, or (3) a failure to communicate with the insured.[3] *See Frog, Switch Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir.1999). In the case at bar, Plaintiffs only allege bad faith based on MedPro's refusal to pay delay damages and postjudgment interest.[4]

■ To establish liability for bad faith refusal to pay, an insured must demonstrate both of the following: (1) the insurer lacked a reasonable basis for denying benefits, and (2) the insurer knew or recklessly disregarded its lack of such reasonable basis.[5] *See Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997) (describing bad faith's elements); *see also Nelson v. State Farm Mut. Auto. Ins. Co.*, 988 F.Supp. 527, 529 (E.D.Pa.1997) (noting two-part bad faith test suggested by Pennsylvania courts); *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 381 (2002) (describing elements of bad faith); *Terletsky v. Prudential Pro. & Cas. Ins. Co.*, 437 Pa.Super.

---

**3.** Courts should construe Section 8371 broadly, as to effectuate the statute's purpose of deterring bad faith conduct. *See Krisa v. Equitable Life Assur. Soc.*, 109 F.Supp.2d 316, 320 (M.D.Pa.2000). Therefore, while several Pennsylvania courts seem to define bad faith only as "an unfounded or frivolous refusal to pay," I adopt the Third Circuit's perspective, which construes Section 8371 more broadly. *See Frog*, 193 F.3d at 751 n. 9.

**4.** MedPro incorporates by reference a number of general allegations better directed toward its breach of contract and negligence claims, which it does not address in its brief on the bad faith issue.

**5.** A party must establish an insurer's bad faith through "clear and convincing" evidence. *See Polselli*, 23 F.3d at 750. Thus, the evidence forwarded must be "so clear, direct, weighty, and convincing 'so as to enable the court to make its decision with a clear conviction.'" *See id.* at 752 (quoting *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir.1985)).

108, 649 A.2d 680, 688 (1994) (defining bad faith). The standard's first prong—focusing on the reasonableness of the insurer's conduct—requires an objective analysis. *See Williams v. Hartford Cas. Ins. Co.*, 83 F.Supp.2d 567, 574 (E.D.Pa. 2000), *aff'd*, 261 F.3d 495 (3d Cir.2001). Therefore, a court need consider only whether *any* reasonable basis existed for the insurer's conduct and not whether the insurance company itself relied on a reasonable foundation. *See Id.* As a matter of law, if some reasonable basis did exist, that insurer cannot have acted in bad faith, under Section 8371. *See Id.*

 Here, Plaintiffs could not establish that MedPro acted in bad faith because, as a matter of law, they cannot satisfy the first prong of the bad faith analysis. MedPro proffers that it had no responsibility to pay delay damages or postjudgment interest because: (1) under the Pennsylvania Constitution's Contract Clause, the statute codifying an insurer's liabilities for delay damages and postjudgment interest relative to the CAT Fund, 40 P.S. § 1301.702(j)[6] ["Section 702(j)"], does not apply to its contract, and (2) under Pennsylvania Law, MedPro's insurance policy limits its liability beyond its policy limits.

I find MedPro's first argument reasonable enough to remove any possibility of bad faith in this matter. The Pennsylvania Constitution's Contract Clause, which adheres to the meaning of the United States Constitution's Contract Clause, provides: "[n]o ... law impairing the obligation of contracts ... shall be passed." PA. CONST. art. I, § 17; *see Transport Workers, Local 290 v. SEPTA*, 145 F.3d 619, 624 (3d Cir.1998) (noting that courts interpret Pennsylvania Constitution's Contract Clause and United States Constitution's Contract Clause in same manner).

To evaluate the Contract Clause's potential application, a court first must determine whether the change in state law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). If such a substantial impairment exists, the court then must identify whether the impairing law serves a legitimate and important public purpose—one which would reasonably justify adjusting the parties' rights. *See Transport Workers, Local 290*, 145 F.3d at 621. Based on this standard, Section 702(j)'s applicability to the current contract appears uncertain, with various reasonable interpretations existing on either side of the issue. Section 702(j) clearly impacts the insurer/patient contract, by allocating non-contractual financial obligations to the insurer. The particular extent of this impairment and the factoring public interests, though, have yet to be resolved by the Pennsylvania courts. In light of these considerations, as a matter of law, MedPro had a reasonable basis for believing Section 702(j) did not apply to its contract and, therefore, for withholding delay damage and postjudgment interest payment.

Even if I did not find MedPro's Contract Clause argument reasonable, though, other issues of relevant unsettled law would make MedPro's refusal to pay reasonable. In particular, Pennsylvania courts have struggled to identify the contours of Section 702(j). *See, e.g., Willet v. Pennsylvania Medical Catastrophe Loss Fund*, 549 Pa. 613, 702 A.2d 850 (1998) (discussing insurer's obligations when it cannot control settlement negotiations); *Lahav v. Main Line Ob/Gyn Assocs.*, 556 Pa. 245, 727 A.2d 1104, 1107 (1999) (discussing whether

---

6. Section 702(j) states in relevant part: "The basic insurance carrier or self-insurer shall be responsible for its proportionate share of de-

lay damages and postjudgment interest [relative to the CAT Fund]."

CAT Fund can be liable beyond its statutory cap); *Hershey Medical Center v. Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund,* 763 A.2d 945, 953 (2000) (noting issues in determining responsibilities in litigation and settlement of matters involving insurance). Even if Section 702(j) does apply, MedPro's particular financial obligations to Plaintiffs for delay damages and postjudgment interest remain less than clear. Moreover, I note that, where MedPro's responsibilities were clear, it paid its $400,000 policy limit into court immediately after entry of judgment.

Thus, I cannot find that MedPro, facing these circumstances, could have acted in bad faith for refusing payment of delay damages and postjudgment interest. At most, MedPro's conduct may amount to breach of contract. The remainder of this lawsuit will determine this and other matters, including MedPro's particular obligations to its insured. Therefore, I dismiss Plaintiffs' bad faith count. An appropriate Order follows.