Lawrence I. LIVORNESE, M.D., David M. Rogers, M.D., and Chestnut Hill Cardiology Consultants, Ltd., Plaintiffs,

v.

The MEDICAL PROTECTIVE CO., Defendant/Third–Party Plaintiff,

v.

Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund, and John Reed, Third–Party Defendants.

Civil Action No. 01–3124.

United States District Court, E.D. Pennsylvania.

March 7, 2003.

Memorandum Clarifying Decision April 11, 2003.

Robert E. Slota, Law Offices of Robert E. Slota, Bryn Mawr, PA, for Plaintiffs.

Kevin H. Wright, Mark R. Zolfaghari, Wright, Young & McGilvery, Blue Bell, PA, for Defendant/Third–Party Plaintiff.

Guy A. Donatelli, Mary–Ellen H. Allen, Lamb, Windle & McErlane, PC, West Chester, PA, for Third–Party Defendants.

### MEMORANDUM AND ORDER

SCHILLER, District Judge.

The Plaintiffs in this action, Dr. Lawrence I. Livornese, Dr. David M. Rogers, and Chestnut Hill Cardiology Consultants, Ltd. (collectively "the Doctors"), were defendants in a medical malpractice suit tried in the Court of Common Pleas for Philadelphia County that resulted in a substantial judgment against them. Following the conclusion of the litigation in state court, Plaintiffs commenced this diversity action seeking the payment of prejudgment and post-judgment interest from their insurance carrier, The Medical Protective Company ("MedPro"), and alleging that the insurer acted in bad faith in violation of 42 Pa. Cons.Stat. § 8371. Subsequently, MedPro impleaded the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund and its director, John Reed (collectively "the CAT Fund"), on the theories of indemnity, contribution, and bad faith. I dismissed Plaintiffs' bad faith claim against MedPro in a Memorandum and Order dated July 16, 2002, see *Livornese v. Medical Protective Co.*, 219 F.Supp.2d 645 (E.D.Pa.2002), and MedPro's bad faith claim against the CAT Fund in a Memorandum and Order dated October 1, 2002, see *Livornese v. Medical Protective Co.*, 226 F.Supp.2d 669 (E.D.Pa. 2002). As it now stands, this case concerns the responsibility for, and the apportionment of, prejudgment and post-judgment interest. The parties have submitted memoranda of law addressing these issues,

and I find that MedPro and the CAT Fund are responsible for the payment of interest as set forth below.

## I. BACKGROUND

The Doctors entered into separate but identical professional liability insurance contracts with MedPro for the period beginning July 1, 1992 and ending July 1, 1993. (Pls.' First Am. Compl., Ex. B.) In 1993, a medical malpractice lawsuit was filed in the Court of Common Pleas for Philadelphia County against Dr. Livornese, Dr. Rodgers and Chestnut Hill Cardiology Consultants, Ltd. In January 1999, a jury returned a verdict against them in the amount of $2,058,000. Adding prejudgment interest in the amount of $713,923 to the verdict, the court entered judgment in the amount of $2,798,924. Following judgment, an appeal was taken, and MedPro paid $400,000 into court on August 24, 1999. The appeals process concluded on September 22, 2000 when the Pennsylvania Supreme Court denied the Doctor's petition for allowance of appeal.

It is undisputed that the CAT Fund paid delay damages in the amount of $173,077 on behalf of Dr. Rogers and $403,845 in delay damages, representing the amount of delay damages to the CAT Fund's $1,685,000 coverage obligation. The CAT Fund further states that it paid $119,131 of post-judgment interest on behalf of Dr. Rogers and $277,972 on behalf of Dr. Livornese, which was the post-judgment interest applicable to the CAT Fund's $1,685,000 coverage obligation.

## II. DISCUSSION[1]

### A. Prejudgment Interest

Rule 238 of the Pennsylvania Rules of Civil Procedure provides for the award of prejudgment interest or "delay damages" in tort cases. Under Rule 238, with exceptions not applicable here, delay damages accrue "from a date one year after the date of original process was first served in the action up to the date of the award, verdict or decision." PA. R. CIV. P. 238(a)(2)(ii). As I indicated above, the judgment against the Doctors includes not only the jury verdict, but a substantial award of delay damages as well.

■ Pointing to the fact that MedPro has paid only $400,000—the stated limits of its insurance policy—toward the judgment, the Doctors contend that MedPro is obligated to pay delay damages, and its failure to do so amounts to a breach of its contractual obligations. In response, MedPro argues that the terms of the insurance contract it entered into with the Doctors unambiguously limits its liability in this matter to $400,000, and, as such, it is has satisfied its obligations to the Doctors. MedPro cites the following language in an endorsement to Plaintiffs' policy: "[MedPro's] liability shall not exceed the stated amount for any one occurrence and subject to the same limitation for each occurrence, [MedPro's] total liability during any one policy year shall not exceed the stated annual aggregate." (Pls.' Am. Compl., Ex. B, "Endorsement 424".)

■ As MedPro points out, "[i]n interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. However, if the policy provision is ambiguous, the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument." *Riccio v. Am. Republic Ins. Co.*, 550 Pa. 254, 705 A.2d 422, 426 (1997) (*citing Bate-*

---

1. In light of the dismissal of the bad faith claims, no material facts are in dispute in this case, and this memorandum addresses the legal issues necessary for the resolution of this matter.

*man v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 590 A.2d 281, 283 (1991)) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983)). Moreover, as MedPro also recognizes, "an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument." *Id.* (*Smith v. Cassida,* 403 Pa.404, 169 A.2d 539, 541 (1961)).

Reading the policy in its entirety reveals that the pertinent policy provision is ambiguous with respect to the insurer's obligations to pay interest. Endorsement 424, the policy provision MedPro cites, makes no mention of interest generally, prejudgment interest, post-judgment interest, or delay damages. The Pennsylvania Supreme Court has found similar policy language to be ambiguous. *See Incollingo v. Ewing,* 474 Pa. 527, 379 A.2d 79 (1977). In *Incollingo,* to which MedPro was also a party, the court noted as an initial matter that "Medical Protective's policy ... makes no reference to the payment of interest. Rather, it provides that Medical Protective will furnish a defense until 'all remedies by appeal ... shall have been exhausted at the Company's cost and without limit as to the amount expended.'" *Id.* at 85 (emphasis deleted). Likewise, Section B of the policy in the instant case provides: "Upon receipt of notice the Company shall immediately assume its re-

sponsibility for the defense of any such claim. Such defense shall be maintained ... until all remedies by appeal ... shall have exhausted at the Company's costs and without limit as the amount expended."

In interpreting the relevant language, the Supreme Court found that the "provisions are, at the least, ambiguous as to interest, and thus must be construed against Medical Protective. The costs of a full defense may reasonably include interest, which is as much a cost of conducting a defense as court costs, attorneys' fees, filing fees and the like. The language in Medical Protective's policy can reasonably be construed to include interest ... we hold that Medical Protective is obligated to pay interest on the entire verdict." *Id.* at 86 (citations omitted). Consistent with the *Incollingo* court's interpretation of similar policy language, I find that the MedPro policy at issue to be ambiguous with respect to the insurer's interest obligations. Moreover, under Pennsylvania law, it is well-settled that ambiguous clauses in insurance contracts should be construed in favor of the insured and against the insurance company. *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999); *Standard Venetian Blind,* 469 A.2d at 566. Accordingly, MedPro's obligations to the Doctors includes the obligation to pay delay damages.[2]

---

2. This conclusion is further supported by the language of Section E of the policy, which was replaced by Endorsement 424. Section E provided that regardless of "the imposition of prejudgment interest ... the Company's total liability for damages including prejudgment interest shall not exceed the stated amount...." By removing the language clearly stating that an award of prejudgment interest would count toward the policy limits, Endorsement 424 in fact suggests the opposite of the proposition that MedPro cites it for. That is, Endorsement 424 supports Plaintiffs' contentions that the parties intended that

MedPro would not responsible for prejudgment interest.

I also note that MedPro, in arguing that its liability is capped at $400,000, relies heavily on a statement in a footnote in *Browne v. Nationwide Mutual Insurance, Co.,* 713 A.2d 663 (Pa.Super.1998): "interest is an expense separate from liability, which may or may not be covered in the contract; absent language to the contrary, an indemnity insurer is not responsible for pre-judgment interest above that which it contractually agreed to pay." *Id.* at 664 n. 2. This statement reiterates the

## B. Post–Judgment Interest

■ As the CAT Fund points out, and as MedPro recognizes, section 702(j) of the Healthcare Services Malpractice Act,[3] which addresses the apportionment of interest between a primary insurer and the CAT Fund, provides as follows:

Delay damages and postjudgment interest applicable to the [CAT Fund's] liability in a case shall be paid by the [CAT Fund] and shall not be charged against the insured's annual aggregate limits. The basic insurance carrier or self-insurer shall be responsible for its proportionate share of delay damages and post-judgment interest.

40 PA. STAT. § 1301.702(j) (1999).

Nonetheless, MedPro takes the position, raising arguments similar to the arguments it raised against its obligation to pay pre-judgment interest, that the terms of its policy precludes it from being liable for post-judgment interest. This interest is inconsistent with Pennsylvania caselaw—caselaw which MedPro relies upon in its arguments related to prejudgment interest. In *Browne v. Nationwide Mutual Insurance, Co.*, 713 A.2d 663, 665 (Pa.Super.1998), the Superior Court addressed whether an insurer's liability, capped by its policy limits, includes post-judgment interest. As the Superior Court stated, an insurance "contract does not defeat the post-award interest called for by [42 PA. CON. STAT. § 8101]. To hold otherwise would allow an insurer to keep the money as long as it sees fit, earning interest itself and denying same to the party to whom the money really belongs." 713 A.2d at 665.

■ Nonetheless, MedPro still may still be entitled to indemnity for the post-judgment interest obligations incurred if the CAT Fund took exclusive control of the litigation. In *Willet v. Pennsylvania Medical Catastrophe Loss Fund*, 549 Pa. 613, 702 A.2d 850 (1997), the Pennsylvania Supreme Court reasoned that "the law of indemnity provides a legal basis to hold the CAT Fund liable for the portion of delay damages attributable to the time period in which the CAT Fund retained exclusive control over settlement negotiations." *Id.* at 855. The CAT Fund has disputed MedPro's contention that the CAT Fund maintained exclusive control of the litigation after MedPro tendered its policy limits. The policy considerations underlying *Willet*, i.e., a party should not be held liable for interest when it remains party to a case for reasons beyond its control remains, coupled with those announced in *Browne*, i.e., that it should be impermissible to hold onto money as long as it sees fit, earning interest itself and denying same to the party to whom the money really belongs, without incurring a penalty, lead to the conclusion that the CAT Fund should be liable to MedPro in indemnity for post-judgment interest incurred on the amount MedPro paid into court on August 24, 1999.

## III. CONCLUSION

For the foregoing reasons, I conclude that MedPro is liable to the Doctors for all amounts still owed as prejudgment and post-judgment interest on the judgment against the Doctors in state court. Additionally, I conclude that MedPro may re-

---

holding in *Incollingo*, see *id.*, and MedPro fails to recognize that its policy language in fact runs contrary its position that it's liability for interest is capped by its policy limits.

**3.** This provision took effect on November 26, 1996. *See Willet v. Pa. Med. Catastrophe Loss*

*Fund*, 549 Pa. 613, 702 A.2d 850, 856 n. 10 (1997). This provision was repealed by P.L. 154, No. 13, § 5104(a)(4), known as the "M-Care Act," which took effect on October 1, 2002.

cover from the CAT Fund all post-judgment interest incurred on the amount MedPro paid into court. An appropriate Order follows.

### ORDER

AND NOW, this ___ day of **March, 2003,** upon consideration of the parties' memoranda of law addressing Plaintiffs' breach of contract claim and the apportionment of damages among the parties, and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant The Medical Protective Company is liable to Plaintiffs Dr. Lawrence I. Livornese, Dr. David M. Rogers, and Chestnut Hill Cardiology Consultants, Ltd. for all amounts still owed as prejudgment and post-judgment interest with respect to the amount paid by Defendant into court on August 24, 1999.

2. Third–Party Defendants Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund and John Reed are liable to Defendant The Medical Protective Company for all amounts paid, or to be paid, representing post-judgment interest on the amount Defendant paid into court on August 24, 1999.

3. By **March 21, 2003,** the parties shall submit to the Court a statement, consistent with the reasoning set forth in the accompanying Memorandum, of each party's proposed allocation of the exact amounts owed by Defendant and Third–Party Defendants.

1. The amount MedPro owes with respect to delay damages incurred pursuant to Pennsylvania Rule of Civil Procedure 238 on its share of the jury verdict is $136,931.00. In addition, post-judgment interest accrued on the MedPro's share of the jury verdict until MedPro paid $400,000.00 into court on August 24, 1999; this amount is $13,677.00. Post-judgment interest also accrued on the delay damages owed on MedPro's share of the jury

### CLARIFYING MEMORANDUM AND ORDER

It is necessary to clarify my previous holding with respect to the liability of the Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund and its director, John Reed (collectively "the CAT Fund"). In my Memorandum and Order of March 7, 2003, I "conclu[ded] that the CAT Fund should be liable to MedPro in indemnity for post-judgment interest incurred on the amount MedPro paid into court on August 24, 1999." *Livornese v. Med. Protective Co.,* Civ. A. No. 01–3124, 253 F.Supp.2d 821, 824, 2003 WL 1618465, at *3 (E.D.Pa. Mar.7, 2003). Having reviewed the parties' statements setting forth the proposed allocation of amounts owed by MedPro and the CAT Fund, it is clear that no party is taking the position that interest has accrued on the $400,000.00 MedPro paid into court since the date it made that payment. As such, the CAT Fund is not liable to MedPro.[1]

An appropriate formal judgment follows.

### CIVIL JUDGMENT

AND NOW, this 11th day of **April, 2003,** upon consideration of the parties' statements setting forth the proposed allocation of amounts owed and for the foregoing reasons, it is hereby **ORDERED** that:

1. Judgment is entered in favor of Plaintiffs Dr. Lawrence I. Livornese, Dr. David M. Rodgers, and Chestnut Hill Cardiology Consultants, Ltd. and

verdict; as of August 24, 1999, this amount totaled $4,682.00. Totaling these amounts, MedPro owed Plaintiffs $155,290.00 as of August 24, 1999. Since August 24, 1999, post-judgment interest has accrued on the $155,290 amount at the rate of 6% per year; this amount totals $33,822.00. Accordingly, MedPro's obligation to Plaintiffs is $189,112.00.

against Defendant The Medical Protective Company in the amount of one hundred eighty-nine thousand one hundred twelve dollars and no cents ($189,-112.00).

2. Judgment is entered in favor of Third–Party Defendants Commonwealth of Pennsylvania Medical Professional Liability Catastrophe Loss Fund and John Reed and against Third–Party Plaintiff The Medical Protective Company.